IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 2472 |
| | ) | (05 CR 254) |
| AMIR HOSSEINI, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

After a five week jury trial before this Court, Amir Hosseini ("Hosseini") was convicted on all 97 remaining counts of "a massive 100-count indictment alleging RICO conspiracy, money laundering, mail fraud, illegal transaction structuring, bank fraud and aiding and abetting a drug conspiracy."[1] After having exhausted his appellate rights, including his filing of an unsuccessful petition for certiorari, Hosseini has filed a pro se 28 U.S.C. §2255 ("Section 2255") motion in which he asserts no fewer than 11 grounds for securing relief from his conviction and sentence.

After the government then filed its court-ordered response to Hosseini's Section 2255 motion, this Court issued a brief June 25, 2013 memorandum order that granted Hosseini leave to file a reply if he so desired (see Rule 5(d) of the Rules

---

[1] That quoted language comes from the description given by our Court of Appeals (United States v. Hosseini, 679 F.3d 544, 548 (7th Cir. 2012) at the outset of its opinion affirming Hosseini's conviction and sentence.

Governing Section 2255 Proceedings for the United States District Courts), and he did so on July 8.  In his reply Hosseini complains about a number of claimed deficiencies in the government's response.

But before this Court turns to the substance of any matters about which Hosseini complains, he must make a further showing.  As is not unusual with Section 2255 motions (and also with proceedings brought under 28 U.S.C. §2254 by prisoners who seek federal court review of their state court convictions), the gravamen of Hosseini's claims is predicated on the assertion that the legal representation that he received--here he points his accusatory finger at both his trial counsel and his counsel on appeal--was constitutionally deficient.  And that line of attack is governed by the principles announced in the Supreme Court's seminal decision in Strickland v. Washington, 466 U.S. 668 (1984).

Here is the key language from Strickland, id. at 687:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the

adversary process that renders the result unreliable. And after the Supreme Court's opinion then occupied a few pages in dealing with the proper yardstick for measuring attorney performance and a few more in identifying some contexts in which prejudice is presumed (none of which are applicable here), it framed the test for showing prejudice in these terms (<u>id</u>. at 694):

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

In this instance a reading of our Court of Appeals' opinion on Hosseini's direct appeal strongly suggests the difficulties that Hosseini must confront in demonstrating that level of probability on the grounds that he has advanced. Although Hosseini's original motion and his reply do essay some effort to address that issue on certain of his contentions, they have not done so as to all.

Although providing a single example of what has just been said must not be misunderstood as typifying Hosseini's task on all 11 of his asserted grounds for relief, such an example may be useful to Hosseini by way of illustration of what more is needed overall. Hosseini's Ground Four asserts that although he wanted to testify in his own defense, his then lead counsel Patrick Tuite ("Tuite") said that if Hosseini tried to do that Tuite

3

would withdraw from the case (and Tuite's then co-counsel John Grady told Hosseini that "Tuite was calling the shots and he would not disagree with Mr. Tuite's decisions").

If this Court were to be required to deal with that Ground Four contention in substantive terms, it would seem almost certain that an evidentiary hearing would be required to hear both sides' versions of the claimed conversation and to make a credibility determination. But what is singularly absent from Hosseini's presentation is any indication as to what he would have proposed to testify about and how, in <u>Strickland</u> terms, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" if he had done so.

In sum, Hosseini is ordered to supplement his reply with a submission that speaks to the issue of potential prejudice under the <u>Strickland</u> canon as to each of his 11 grounds.[2] That supplement should be tendered to this Court (with a copy of course being transmitted to government counsel) on or before August 15, 2013.

_____
Milton I. Shadur
Senior United States District Judge

Date: July 25, 2013

---

[2] Where Hosseini believes that he has already done that as to any particular ground in either his original motion or his reply, he need not reinvent the wheel--instead his specific reference to the earlier filing will be sufficient.

4